HOBART C. FASH, Respondent, *against* THE EAST RIVER FERRY COMPANY, Appellant.

(Decided June 6th, 1887.)

In an action for personal injuries, alleged to have been caused by defendant's negligence to plaintiff while a passenger on defendant's ferry-boat, the only evidence for plaintiff as to the way in which the accident occurred was his own testimony, which was not clear or very satisfactory, and contradicted material allegations of his complaint; his account of what he was doing for some hours preceding, and of what happened immediately after the accident, was also unsatisfactory, although the injury was not such as to cause his apparent confusion of mind and want of recollection; he was contradicted by several disinterested witnesses as to the circumstances of the accident; one of them testified, that immediately after the accident, plaintiff frequently said it was his own fault, and this plaintiff did not explicitly deny, but said he had no recollection on the subject. *Held,* that a verdict for plaintiff should be set aside, as against the weight of evidence.

APPEAL from a judgment of this court entered upon the verdict of a jury and from an order denying a motion for a new trial.

The facts are stated in the opinion.

*Rice & Bizur,* for appellant.

*N. J. Waterbury,* for respondent.

BOOKSTAVER, J. — The action was brought to recover damages for personal injuries, alleged to have been caused by the negligence of the defendant.

Fash *v.* East River Ferry Co.

At the close of plaintiff's case, defendant moved to dismiss the complaint, on the ground that plaintiff had not shown that he was free from negligence; and also, because the testimony showed his negligence contributed to the injury; which was denied, and defendant excepted.

When the testimony was closed on both sides, this motion was renewed on the foregoing grounds; and on the further ground that there was no proof of any negligence on the part of the defendant; it was denied, and defendant excepted.

On the coming in of the verdict, the defendant also moved for a new trial, on the judge's minutes, on the exceptions taken during the trial, and on the grounds that the verdict was against the evidence and the weight of evidence; and that the damages were excessive; which was denied.

These motions bring up for review the entire evidence; and accordingly we have gone over it with much care.

The only witness for the plaintiff as to the accident, and the way in which it occurred, was the plaintiff himself. His testimony as to how the accident happened is not at all clear; nor is it very satisfactory.

The plaintiff testified that, about 8 o'clock in the evening of the 11th of March, 1885, he crossed from 34th Street, New York, to Hunter's Point, on one of the defendant's ferry-boats. While crossing, he sat in the ladies' cabin. When the boat reached the slip, he left the cabin and crossed over to the gentlemen's side and attempted to get off the boat. At that time, it appeared to be securely fastened, and the chain at the bow was down. Several persons had been standing in the passage-way for carriages. These were some feet ahead of him, and he did not notice whether they jumped off or stepped over. There were no persons immediately in front of him in the foot-passenger way. As he walked, he looked, and everything appeared to be safe. The night was dark; the lights on the boat and bridge were insufficient and dim; so that he failed to see there was a space of about 14 inches between the boat and

the bridge. In stepping off, his foot went in this space, and his leg, just below the knee, was injured.

He also testified that, after the accident, the defendants had put up additional lights; but on cross-examination, he could neither tell where the additional lights were placed, nor where the old ones were.

In his complaint, he alleged that, as he was "walking slowly and prudently in the crowd of passengers, going off from the boat, and going therefrom to the wharf or landing-place," he "stepped between the boat and the wharf or landing-place; and his right leg was injured and crushed between the boat and wharf or landing-place; . . . that the wharf or landing-place was so dimly and insufficiently lighted by the defendant, that the plaintiff could not see that the boat was not fastened to it." This statement in his complaint, which was sworn to within three months of the accident, is not only at variance with his testimony, as given on the trial, but is contradictory of it. In his complaint, he alleges that he went off the boat in a crowd, leaving it to be inferred that, for that reason, as well as for the insufficient lighting, he did not see the open space; while, on the trial, he testified that he was entirely alone while attempting to get off the boat. In his complaint, he claims that his leg was crushed between the boat and bridge; while the testimony, on the trial, shows that it was not at all crushed; but that what injury he received was caused entirely by the front part of his leg coming in contact with some hard substance, — probably the bridge.

His account of what he was doing in the four hours preceding the accident is not at all satisfactory. He says that, on the day of the accident, he left his business about 4 o'clock in the afternoon; that he walked up-town with James Bleecker, and parted with him on the corner of 58th or 59th Street and Fourth Avenue, about 6 o'clock in the afternoon; that he then went to the 7th Regiment Armory, which is at the corner of 66th Street and Fourth Avenue, where he staid not more than 15 minutes; that he waited there for his first sergeant, whom he did not see; that he

did not see any one there whom he knew; and that from there he went to the 34th Street ferry.  It does not appear that he had any appointment with his sergeant, at that time or place ; and without having such an appointment, it is difficult to understand why he should expect to meet him at the hour he was there.

Again, his account of what happened immediately after the accident is equally unsatisfactory, although it does not appear that the nature of the injury was sufficient to cause the confusion of mind under which he labored at that time. He says he could not recollect anything that happened at the time of the accident, nor whether he lay on the floor or on a bench in the waiting-room ; nor could he recollect anything that he said on that night, either in the waiting-room or carriage.

From the evidence, it is manifest that, at the time of the accident, the boat was not fastened to the bridge at all. The evidence of all the defendant's witnesses is to the effect that, at the time the boat was coming into the slip, and before it had struck the bridge, the plaintiff was leaning on one of the stanchions directly in front of the chain. John L. H. Mosier, an entirely disinterested witness, says : " The first place at which I am positive I saw Fash, he was leaning against the stanchion — the right stanchion, to which the chain fastened, on the right hand side of the boat. . . .  I should say the boat was from 12 to 15 feet from the bridge, when I first noticed him.  The bow of the boat was in the slip, and the port side . . . struck the rack after I had seen him."  The testimony of Mr. Flynn, another disinterested witness, corroborates Mr. Mosier, and is substantially to the same effect; as is also the testimony of William H. Westfall, a deck hand in the employ of the defendant.  All the witnesses testify that at the time of the accident the boat was at least 14 inches from the bridge ; that it was backed immediately ; and that it did not come any nearer the bridge till after the accident was over.  This shows that the boat could not have been made fast at the time, or it could not have backed ; and also, that

the leg was not crushed. There is an entire absence of proof that the chain was let down by any employe of the company; while Westfall testifies that the plaintiff himself let down the chain, after it had been put up by him.

As against the plaintiff's testimony that the bridge was insufficiently lighted, the defendants prove by five witnesses, three of whom are entirely disinterested, that there were lamps burning at the time, and that they cast a clear light over the whole bridge, so that they had no difficulty whatever in seeing clearly the place where the boat and bridge met. Mr. Flynn testified that "the light was shining on the bridge, and on the end of the boat also; so that anybody could see, who had any eyes at all." At least three witnesses testified that there had been no change whatever in the lights on the bridge or boat since the accident; and it nowhere appears in the case that any similar accident, or any accident of any kind, has occurred at that place, by reason of the insufficient lighting of the boat or bridge, although thousands of persons must have crossed under similar circumstances.

Westfall testified that, while being taken home in a carriage, plaintiff frequently said that it was his own fault, in jumping off the boat, and plaintiff does not deny this explicitly, but says he has no recollection on the subject.

Two of defendant's witnesses testify as to the cause of the confusion of plaintiff's mind at the time; one of whom was the physician who first attended him. But, as this was disputed by plaintiff and other witnesses on his behalf, we do not lay great stress upon it in arriving at the conclusion to which we have come.

It is always with the greatest reluctance that a court will disturb the verdict of a jury, on the ground that it is against the weight of evidence; and it will do so only in those cases where it is forced to the conclusion that, unless it is done, injustice will result, and that the verdict was the outcome of some misconception. But when it has arrived at such a conclusion, it would fail in its duty, if it did not exercise the supervision over verdicts given it by law

(*Clark* v. *Mechanic's Nat. Bank,* 8 Daly 481; *McCarthy* v. *Christopher & 10th St. R. Co.,* 10 Daly 540; *Siebert* v. *Erie Nav. Co.,* 49 Barb. 586; *Kinsley* v. *Brooklyn Cross Town R. Co.,* 1 N. Y. St. Rep'r 560).

We think this is one of the few cases in which we should exercise that power. By doing so, no right is taken away. The effect of setting aside the verdict is simply to subject the case to further consideration by another jury, and this, we think, should be done.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

J. F. DALY, J., concurred.

ALLEN, J., dissented.

Judgment reversed and new trial ordered, with costs to abide event.